```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/16/10
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
THE NAME LLC,

                        Plaintiff,

        -against-

DAVID AMÉRICO ORTIZ ARIAS;
ALBANIA ROSA ARIAS ORTIZ;
ENRIQUE ORTIZ; A. ORTIZ C. POR A.;
IMAGENES DOMINICANAS; and
1 & 1 INTERNET, INC.,

                        Defendants.
------------------------------------------------------------X

10 Civ. 3212 (RMB)

**OPINION & ORDER**

## I. Introduction

On August 17, 2010, The Name LLC, a Delaware limited liability company ("Plaintiff" or the "Company") filed an amended complaint ("Complaint") against David Américo Ortiz Arias ("Ortiz"), Albania Rosa Arias Ortiz, and Enrique Ortiz (collectively, "Ortiz Defendants"), two Dominican Republic corporations, A. Ortiz C. por A. and Imagenes Dominicanas ("Imagenes"), and a Delaware corporation, 1 & 1 Internet, Inc. ("1 & 1") (collectively, with the Ortiz Defendants, "Defendants") pursuant to the United States Trademark Act, 15 U.S.C. § 1114 et seq. ("Lanham Act"), Section 360-*l* of the New York General Business Law, and New York common law. (Compl., dated Aug. 12, 2010, ¶¶ 16–22.) Plaintiff, which owns and operates the "40/40 Club" in New York, Las Vegas, and Atlantic City, alleges, among other things, that Defendants' "use of [the registered trademarks and service marks '40/40' and '40/40 CLUB'] to advertise Defendants' Dominican nightclub" on the U.S.-hosted website located on the Internet at the Uniform Resource Locator ("URL") http://www.fortyforty.net (the "Infringing Website") violates several provisions of the Lanham Act, including the prohibitions against trademark

infringement and dilution, 15 U.S.C. § 1114, false designation of origin, 15 U.S.C. § 1125(a), and the federal Anti-Cybersquatting Protection Act, 15 U.S.C. § 1125(d) ("ACPA"), as well as New York State law. (Compl. ¶¶ 3, 16–22.) Plaintiff also asserts a claim for unjust enrichment. (See Compl. ¶¶ 89–94.)[1]

On September 2, 2010, Ortiz filed a motion to dismiss the Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") arguing, among other things, that: (1) Plaintiff alleges activities that "took place solely in the Dominican Republic" and the Lanham Act does not apply to "alleged infringing activities that take place on foreign soil"; (2) Plaintiff fails to state claims of trademark infringement and false designation of origin because Plaintiff "has failed to show that a Spanish nightclub, located in the Dominican Republic, owned predominantly by residents of the Dominican Republic, and promoted by an almost entirely Spanish [language] website is likely to be confused with Plaintiff's sports bar" located in the United States; (3) Plaintiff's allegations of cybersquatting fail because Plaintiff provides no factual support demonstrating that Defendants "registered the domain name at issue to 'sell' the domain name back to the Plaintiff or to 'divert customers' from the Plaintiff's sports bar to Defendants' nightclub in the Dominican Republic"; (4) Plaintiff fails to allege facts that a New York court is the convenient and most appropriate forum; (5) Plaintiff's state law claim for trademark dilution should be dismissed because "Plaintiff has provided nothing more than 'bald assertions' and a formulaic recitation of the elements of a cause of action" and because of the

---

[1] Plaintiff states that the Ortiz Defendants' operation of the Dominican nightclub called "Forty Forty" is also the subject of pending litigation brought by Plaintiff in the Dominican Republic, and the instant action is "limited to the unlawful conduct with respect to the Infringing Website." (Compl. at 3 n.1.) At oral argument held on November 16, 2010, the parties advised the Court that a decision in the Dominican case may be forthcoming. (See Tr. of Proceedings, dated Nov. 16, 2010 ("Hr'g Tr.").) The parties dispute the implications of any such decision on the case at bar. (See Hr'g Tr.)

2

"lack of underlying federal question jurisdiction over purely state law claims"; and (6) Plaintiff's unjust enrichment claim should be dismissed because "Plaintiff has not pled any facts supporting its allegation that [Ortiz] was enriched at the expense of Plaintiff" or that "it is against equity and good conscience to permit [Ortiz] to retain what is sought to be recovered." (Def. Ortiz's Mem. of Law in Support of Mot. to Dismiss, dated Aug. 30, 2010 ("Def. Mem."), at 2–4 (internal citations omitted), 21–22, 24–25 (internal quotation marks omitted).)

On September 27, 2010, Plaintiff filed an opposition ("Opposition") countering, among other things, that: (1) "the instant action pertains entirely to the U.S.-hosted Infringing Website, and thus requires no 'extraterritorial' exercise of subject matter jurisdiction"; (2) "[l]ikelihood of confusion is a fact-intensive inquiry that is not ripe for adjudication on the pleadings," and it is adequately alleged, in any event, because "the [Complaint] alleges in detail the confusion implicit in Ortiz's creation and use of a website that has the same name as Plaintiff's clubs," particularly where "international media . . . have carried stories on Ortiz's operation"; (3) the Complaint clearly and sufficiently alleges the "bad faith" element of an ACPA claim for cybersquatting in that it notes Ortiz's awareness of the existence of the Plaintiff's nightclub prior to the launch of his own nightclub and the Infringing Website; (4) Ortiz's forum non conveniens argument is "specious" because, among other reasons, "Plaintiff is litigating an intellectual property claim under the Lanham Act in its home forum against an American citizen" and "the Dominican Republic is not an adequate forum for the settlement of a dispute . . . involving a trademark violation under the Lanham Act"; and (5) Plaintiff's state law claims should not be dismissed because "Plaintiff has adequately pled the federal claims in this action" and thus the Court "has the authority to exercise supplemental jurisdiction over all claims that are so related to claims in the action within such original jurisdiction pursuant to 28 U.S.C. § 1367(a)." (Pl.'s

3

Mem. of Law in Opp'n to Def. Ortiz's Mot. to Dismiss, dated Sept. 27, 2010 ("Opp'n"), at 3, 6, 13–16, 18–22, 17 n.2 (internal quotation marks omitted).)

On October 12, 2010, Ortiz filed a reply. (Reply Mem. of Law of Def. Ortiz in Further Support of Mot. to Dismiss, dated Oct. 12, 2010.) Oral argument was held on November 16, 2010. (See Hr'g Tr.)

**For the reasons set forth below, Ortiz's motion to dismiss is denied.**

## II.  Background

For purposes of this motion, the facts in the Complaint are assumed to be true and are construed in the light most favorable to Plaintiff. See Cartier v. Micha, Inc., No. 06 Civ. 4699, 2007 WL 1187188, at *1 (S.D.N.Y. Apr. 20, 2007).

Plaintiff, a Delaware limited liability company with a place of business in New York City, owns the "registered trademarks and service marks '40/40' and '40/40 CLUB'" (collectively, the "40/40 Marks") and has used those marks "since 2003 to operate world-famous nightclubs under the name '40/40 Club' in New York, Las Vegas, and Atlantic City." (Compl. ¶¶ 1, 7.) Plaintiff also licenses the 40/40 Marks "for use in the operation of nightclubs in additional cities outside the United States, such as Tokyo and Macau," which are slated to open in the near future. (Compl. ¶ 18.) The 40/40 nightclubs "frequently host events for A-list celebrities, including Hip-hop Mogul Jay-Z, a part-owner of Plaintiff." (Compl. ¶ 22.) In addition to its nightclub businesses, Plaintiff "sells and distributes merchandise, including cigars and clothing" that prominently feature the 40/40 Marks. (Compl. ¶ 19.) In connection with these enterprises, the Company operates an Internet website, http://the4040club.com, which "promotes the 40/40 brand and which Plaintiff expends substantial sums to operate." (Compl. ¶ 25.) The website "advertises [the Company's] goods and services and offers many items of

4

40/40-branded merchandise for sale online." (Compl. ¶ 25.) Plaintiff has held United States Patent and Trademark Office ("USPTO") registration numbers 2,940,829 and 3,157,149 since October 17, 2006. (Compl. ¶ 20.)

The 40/40 Marks have come to "identify the Company's goods and services and distinguish them from those of others, and have come to represent and symbolize substantial goodwill belonging exclusively to Plaintiff." (Compl. ¶ 21.)

David Américo Ortiz Arias, better known as David Ortiz or "Big Papi," is a professional baseball player for the Boston Red Sox baseball club. (See Compl. ¶ 8.) Plaintiff alleges that Ortiz is a "naturalized American citizen" and "part owner of [A. Ortiz C. Por A. (the "Infringing Company")], which operates the Infringing Website." (Compl. ¶ 8.) Plaintiff further alleges that at all times relevant to the Complaint, Ortiz "had knowledge of the infringing activity of the Infringing Company, had the authority to direct or control the infringing activity, and was a moving, active, and conscious force behind the infringing activity of the Infringing Company." (Compl. ¶ 8.)

1 & 1 is a Delaware corporation and the webhost of the Infringing Website. (See Compl. ¶ 13.) The Internet Protocol Address ("IP Address") of the Infringing Website is physically located at 1 & 1's offices in Chesterbrook, Pennsylvania. (See Compl. ¶ 13.) Plaintiff alleges that 1 & 1 "acted as an agent of one or more of the Ortiz Defendants" in connection with the alleged infringing activities. (Compl. ¶ 13.) Further, Plaintiff alleges that 1 & 1 "continued to provide webhosting and/or other services to one or more of the other Defendants after the time at which it obtained knowledge that one or more of the other Defendants was engaging in trademark infringement and/or false designation of origin and/or cybersquatting in violation of the Lanham Act through the Infringing Website." (Compl. ¶ 49.)

5

In or about October 2009, Defendants opened a nightclub in the Dominican Republic under the name "Forty Forty" (the "Infringing Club"). (See Compl. ¶ 31.) On or about July 25, 2009, Defendants registered the Infringing Website on which they use Plaintiff's 40/40 Marks to draw attention and clientele to the Infringing Club. (See Compl. ¶¶ 3, 32–34.) The Infringing Website is hosted in the United States by 1 & 1. (See Compl. ¶ 35.) Apart from the words "Forty Forty," the Infringing Website is entirely in Spanish. (See Compl. ¶ 36.)

Plaintiff alleges that each of the tabbed web pages within the Infringing Website "blatantly trades on the goodwill and fame that Plaintiff has built up over seven years of use of the 40/40 Marks" in the global operation of Plaintiff's 40/40 Clubs. (Compl. ¶ 39.) Plaintiff further alleges that the Infringing Website has "caused substantial marketplace confusion and damage to Plaintiff and to the 40/40 Marks around the world, including the United States" and has "resulted in media coverage about the [Infringing Club] on international television news outlets, including Univision and Telemundo, which reach millions of viewers in the United States." (Compl. ¶ 4.) And, Plaintiff alleges that Defendants' bad faith is evidenced both by Ortiz's awareness of the 40/40 Club in New York, "since he had been a patron there on several occasions" before he opened his Infringing Club and the Infringing Website, and by the fact that "Defendants elected to use an English-language name 'Forty/Forty' to operate their club in the Spanish-speaking Dominican Republic." (Compl. ¶ 5.)

## III. Legal Standard

To survive a Fed. R. Civ. P. 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, "the plaintiff bears the burden of proving the [c]ourt's jurisdiction by a preponderance of the evidence." Bruce Winston Gem Corp. v. Harry Winston, Inc., No. 09 Civ. 7352, 2010 WL 3629592, at *1 (S.D.N.Y. Sept. 16, 2010) (quoting Makarova v. United States,

201 F.3d 110, 113 (2d Cir. 2000)); see also Felton v. King of Salsa, LLC, No. 09 Civ. 7918, 2010 WL 1789934, at *1 (S.D.N.Y. May 4, 2010); Invista S.a.r.l. v. E.I. Du Pont De Nemours & Co., No. 08 Civ. 7270, 2008 WL 4865208, at *2 (S.D.N.Y. Nov. 3, 2008).

"To survive a motion to dismiss [under Fed. R. Civ. P. 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Balenciaga Am., Inc. v. Dollinger, No. 10 Civ. 2912, 2010 WL 3952850, at *6 (S.D.N.Y. Oct. 8, 2010) (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Software For Moving, Inc. v. Frid, No. 09 Civ. 4341, 2010 WL 2143670, at *2 (S.D.N.Y. May 10, 2010) (quoting Iqbal, 129 S. Ct. at 1949).

"It is well settled that the standards for false designation of origin claims under Section 43(a) of the Lanham Act (15 U.S.C. § 1125) are the same as for trademark infringement claims under Section 32 (15 U.S.C. § 1114)." Twentieth Century Fox Film Corp. v. Marvel Enters., Inc., 220 F. Supp. 2d 289, 297 (S.D.N.Y. 2002). To state a claim for trademark infringement under 15 U.S.C. §§ 1114, 1125(a), Plaintiff must "allege facts which establish that [its] mark merits protection and that Defendants' use of [its] mark is likely to cause consumer confusion as to the mark's source." Arnold v. ABC, Inc., No. 06 Civ. 1747, 2007 WL 210330, at *2 (S.D.N.Y. Jan. 29, 2007) (citing Louis Vuitton Malletier v. Dooney & Bourke, Inc., 454 F.3d 108, 115 (2d Cir. 2006)).

To state a claim under the ACPA, a party "must plead that the defendant, in bad faith, registered, trafficked in, or used a domain name that is identical or confusingly similar to Plaintiff's distinctive mark." E. Gluck Corp. v. Rothenhaus, 585 F. Supp. 2d 505, 519 (S.D.N.Y.

7

2008).

"The doctrine of <u>forum non conveniens</u> allows a district court to dismiss a case where the preferred venue is a foreign tribunal." Overseas Media, Inc. v. Skvortsov, 441 F. Supp. 2d 610, 614 (S.D.N.Y. 2006). "The defendant moving for dismissal on <u>forum non conveniens</u> grounds bears the burden of proof." Id. (internal quotation marks omitted). Dismissal will generally be inappropriate "unless the balance of convenience tilts strongly in favor of trial in the foreign forum." Minibooster Hydraulics A/S v. Scanwill Fluid Power ApS, 315 F. Supp. 2d 286, 290 (W.D.N.Y. 2004) (internal quotation marks omitted).

## IV. Analysis

### (1) Extraterritorial Application of the Lanham Act

Ortiz argues that "the Lanham Act simply does not apply to alleged infringing activities that take place on foreign soil," and that the Infringing Website "was created and maintained in the Dominican Republic" and "is predominantly in Spanish." (Def. Mem. at 2 (emphasis omitted).) Plaintiff counters that applying the Lanham Act "to a U.S. citizen who is using one or more servers within the U.S. to host a website that infringes a U.S.-registered trademark" is not extraterritorial. (Opp'n at 2 (emphasis omitted).)

A website hosted in the United States is subject to Lanham Act claims. See Rodgers v. Wright, 544 F. Supp. 2d 302, 314–15 (S.D.N.Y. 2008) (operation of American website to further trademark infringement constitutes using trademarks in American commerce). Plaintiff alleges in the Complaint that the "Infringing Website is hosted **within the continental United States**, where Congress's power to regulate interstate commerce is absolute." (Opp'n at 7 (emphasis in original); see also Compl. ¶¶ 1, 3.) The instant lawsuit is a domestic dispute, as Plaintiff alleges that Ortiz is a United States citizen using one or more servers within the United States to host a

8

website that infringes a U.S.-registered trademark. (See Compl. ¶ 8.)

### (2) Lanham Act: Likelihood of Confusion

Ortiz argues that there is no likelihood of confusion between Defendants' nightclub in the Dominican Republic and Plaintiff's "sports bar" in New York, Atlantic City, and Las Vegas. (Def. Mem. at 3, 14–15.) Plaintiff counters that the Complaint "adequately alleges likelihood of confusion, which is an issue of fact and unamenable to dismissal at the pleading stage." (Opp'n at 14.)

Likelihood of confusion is "a fact-intensive analysis that ordinarily does not lend itself to a motion to dismiss." Merck & Co., Inc. v. Mediplan Health Consulting, Inc., 425 F. Supp. 2d 402, 412 (S.D.N.Y. 2006) (citing Cooper v. Parsky, 140 F.3d 433, 440 (2d Cir. 1998) ("The task of the court in ruling on a [Fed. R. Civ. P.] 12(b)(6) motion is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.") (internal quotation marks and citation omitted)); see also Deere & Co. v. MTD Prods., Inc., No. 00 Civ. 5936, 2001 WL 435613, at *1 (S.D.N.Y. Apr. 30, 2001).

The Complaint adequately alleges that Defendants' acts of offering goods and services using the 40/40 Marks on the Internet "have caused actual confusion, mistake and deception among relevant consumers as to endorsement and sponsorship of Defendants' goods and services and have deceived the relevant public into initially and generally believing that Defendants' goods and services are associated with or are otherwise endorsed, sponsored or authorized by Plaintiff." (Compl. ¶ 55); see also Solow v. BMW (US) Holding Corp., No. 97 Civ. 1373, 1998 WL 717613, at *3–4 (S.D.N.Y. Oct. 14, 1998).

### (3) Lanham Act: ACPA

Ortiz argues that Plaintiff has not adequately pled Defendants' "bad faith intent to profit"

9

from the domain name http://www.fortyforty.net. (See Def. Mem. at 15–17.) Plaintiff counters that its allegations of fact in the Complaint "satisfy the notice pleading standard for a cybersquatting claim under [the ACPA]." (Opp'n at 16.)

The ACPA provides in pertinent part that a person is liable to a trademark owner if "that person (i) has a bad faith intent to profit from that mark . . . and (ii) registers, traffics in, or uses a domain name that" is "identical or confusingly similar to" a distinctive or famous mark. 15 U.S.C. § 1125(d)(1). Plaintiff alleges that Ortiz: (1) "exercise[s] control over [Imagenes, the registrant of the domain name] with respect to the domain name . . . ."; (2) "registered, trafficked in, or used a domain name that is identical to and/or is confusingly similar to and/or is dilutive of one or both of the 40/40 Marks"; and (3) "[has], and continue[s] to have, a bad faith intent to profit from [his] use of the 40/40 Marks." (Compl. ¶¶ 74, 76, 77.)

Plaintiff also alleges that it has used the 40/40 Marks since 2003 "to operate world-famous nightclubs" in several U.S. cities and that Ortiz had actual knowledge of Plaintiff's marks when Defendants registered the domain name, asserting that Ortiz had been a patron of the 40/40 Club in Manhattan on several occasions prior to the registration. (See Compl. ¶¶ 17, 30.) These allegations are sufficient to state a claim under the ACPA and raise the allegations above the "speculative level." See E. Gluck Corp., 585 F. Supp. 2d at 520 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

### (4) Forum Non Conveniens

Ortiz asserts, among other things, that: (1) "the Dominican Republic is an adequate and alternative forum for this dispute" because it "has been deemed an adequate forum for purposes of forum non conveniens by United States courts" and "the Plaintiff has filed a parallel lawsuit in the Dominican Republic based upon substantially the same allegations as this case for trademark

10

infringement of the mark '40/40 Club'"; (2) "Plaintiff's choice of forum is not entitled to particular deference" because, "all pertinent factors point to the Dominican Republic as the appropriate forum," such as the fact that "the allegedly infringing website was created and is maintained by a Dominican resident"; and (3) "the public and private factors overwhelmingly favor the Dominican Republic as the appropriate forum." (Def. Mem. at 18–20.) Plaintiff counters, among other things, that: (1) "Plaintiff's choice of its home venue is all but conclusive" and that Plaintiff is based in Manhattan, its "witnesses work and/or reside [in New York], and the vast majority of the evidence it possesses is located [in New York]"; (2) "the Dominican Republic is not an adequate forum for the adjudication of U.S. trademark claims" largely because "a judgment from [a] Dominican court would have no effect in the United States," thereby "eliminat[ing] any judicial remedy available to Plaintiff"; and (3) "the public interest weighs heavily in favor of adjudicating Plaintiff's U.S. trademark rights in this Court." (Opp'n at 18–23.)

"It is the burden of the moving party to establish that the alternative forum is clearly more appropriate." Minibooster, 315 F. Supp. 2d at 290 (internal citations and quotation marks omitted); see also Greenlight Capital, Inc. v. GreenLight (Switz.) S.A., No. 04 Civ. 3136, 2005 WL 13682, at *4 (S.D.N.Y. Jan. 3, 2005) (internal citation omitted). "The courts of this district have declined to dismiss cases pursuant to forum non conveniens where plaintiff asserts U.S. trademark or copyright claims." Jose Armando Bermudez & Co. v. Bermudez Int'l, No. 99 Civ. 9346, 2000 WL 1225792, at *4 (S.D.N.Y. Aug. 29, 2000). Ortiz has not shown that Plaintiff will be able to fully litigate its U.S. trademark rights in the Dominican Republic because "[t]rademark rights are largely territorial, as they 'exist in each country solely according to that country's statutory scheme.'" Id. at *4 (quoting Fin. Matters, Inc. v. PepsiCo, Inc., 806 F. Supp. 480, 484

11

(S.D.N.Y. 1992)); see also Fuji Photo Film Co. v. Shinohara Shoji Kabushiki Kaisha, 754 F.2d 591, 599 (5th Cir. 1985).

Weighing all the appropriate factors, including, among others, Plaintiff's choice of forum and the convenience of the potential witnesses, the Court concludes that this is the appropriate forum. See Minibooster, 315 F. Supp. 2d at 291. And, because "a claimant's rights (or lack of rights) to a trademark in the United States cannot be established by the fact that the claimant was found by a foreign court to have (or not to have) rights over the same mark in a foreign country," Otokoyama Co. Ltd. v. Wine of Japan Import, Inc., 175 F.3d 266, 272 (2d Cir. 1999), the pending Dominican litigation will likely not decisively resolve Plaintiff's U.S. trademark claims; see also Jose Armando Bermudez & Co., 2000 WL 1225792, at *5 ("The public interest in having local controversies adjudicated locally is particularly important here. The U.S. trademark laws are primarily consumer protection laws, designed to shield domestic consumers from fraud and deception in the marketing and sales of products.").

### (5) New York General Business Law § 360-*l*

Ortiz argues that, with respect to Plaintiff's New York General Business Law § 360-*l* claim for injunctive relief as a result of injury to business reputation and dilution of its trademarks, Plaintiff has "provided nothing more than bald assertions and a formulaic recitation of the elements of a cause of action." (Def. Mem. at 21 (internal quotation marks omitted).) Plaintiff counters that "the Court has the authority to exercise supplemental jurisdiction" over state law claims that are "related to the sufficiently pled federal claims." (Opp'n at 17 n.2.)

To state a claim for trademark dilution under § 360-*l*, Plaintiff must show "(1) that the plaintiff's mark is truly distinctive or has acquired secondary meaning, and (2) a likelihood of dilution either as a result of 'blurring' or 'tarnishment.'" Info. Superhighway, Inc. v. Talk Am.,

12

Inc., 395 F. Supp. 2d 44, 56 (S.D.N.Y. 2005). Blurring occurs "when the defendant uses a mark that is the same or similar to the plaintiff's mark to identify its goods, causing a potential loss of distinctiveness of the plaintiff's mark to the plaintiff's product." Hearts on Fire Co., LLC. v. L C Int'l Corp., No. 04 Civ. 2536, 2004 WL 1724932, at *3 n.2 (S.D.N.Y. July 30, 2004). Tarnishment occurs "when the defendant uses the mark in a way that dilutes the quality or prestige associated with the plaintiff's mark because of confusion between the two marks." Id. at *3 n.3.

Plaintiff adequately alleges that its 40/40 Marks are distinctive and/or have acquired secondary meaning -- and indeed, Ortiz does not dispute this allegation -- and Plaintiff has demonstrated, at this stage, likelihood of dilution as a result of "blurring" or "tarnishment." See, e.g., Edward B. Beharry & Co., Ltd. v. Bedessee Imps., Inc., No. 09 Civ. 0077, 2010 WL 1223590, at *9–10 (E.D.N.Y. Mar. 23, 2010).

As to distinctiveness, Plaintiff states in the Complaint that it "actively seeks out national and international media coverage of its nightclubs both in print and broadcast media." (Compl. ¶ 22.) As a result of its efforts, the 40/40 Marks have been featured on "several well-known national television news and entertainment shows," including Access Hollywood, Extra, and the MTV Video Music Awards, as well as in "mainstream entertainment magazines," including *Vanity Fair*, *Forbes*, and *People*. (Compl. ¶¶ 23–24.) These allegations are sufficient to demonstrate distinctiveness or secondary meaning of Plaintiff's 40/40 Marks. See SMJ Grp., Inc. v. 417 Lafayette Rest. LLC, No. 06 Civ. 1774, 2006 WL 2516519, at *3 (S.D.N.Y. Aug 30, 2006).

Plaintiff also alleges, among other things, that: (1) Defendants' use of the 40/40 Marks on the Infringing Website "dilutes the marks because it blurs their distinctiveness" and "will

13

cause the marks to lose their ability to serve as a unique identifier of the Plaintiff"; and (2) Defendants' use of the 40/40 Marks on the Infringing Website "also tarnishes the marks by associating the marks with inferior goods to those offered by Plaintiff within the industry of high-end fashion." (Compl. ¶¶ 85–86.) Such allegations are sufficient to state a claim for dilution under New York General Business Law § 360-*l*. See Merck, 425 F. Supp. 2d at 416–17 (allegation of possibility that infringing mark would cause original mark to "lose its ability to serve as a unique identifier of plaintiff's product" sufficient to sustain a dilution claim).

### (6) Unjust Enrichment

Ortiz argues that Plaintiff has not adequately pled a claim for unjust enrichment because Plaintiff has not pled any facts supporting its allegation that Ortiz was "enriched at the expense of Plaintiff" or that "it is against equity and good conscious to permit him to retain what is sought to be recovered." (Def. Mem. at 25.) Plaintiff counters that "the Court has the authority to exercise supplemental jurisdiction" over state law claims that are "related to the sufficiently pled federal claims." (Opp'n at 17 n.2.)

An unjust enrichment claim under New York law "requires that defendants be enriched; that the enrichment be at plaintiff's expense; and that defendants' retention of the benefits be unjust." BigStar Entm't, Inc. v. Next Big Star, Inc., 105 F. Supp. 2d 185, 217 (S.D.N.Y. 2000) (citing Lightfoot v. Union Carbide Corp., 110 F.3d 898, 905 (2d Cir. 1997)). Plaintiff's allegations that (1) Ortiz profited from his unlawful use of the 40/40 Marks in the operation of the Infringing Website (see Compl. ¶ 90); (2) Ortiz's control over the Infringing Website "has caused substantial marketplace confusion and damage to Plaintiff and to the 40/40 Marks around the world" (Compl. ¶ 4); and (3) Ortiz's profits were procured in violation of federal and state trademark law (see Compl. ¶ 3), are sufficient to state a claim for unjust enrichment. See Zip

14

Int'l Grp., LLC v. Trilini Imps., Inc., No. 09 Civ. 2437, 2010 WL 648696, at *6 (E.D.N.Y. Feb. 22, 2010) (plaintiff's allegations that (1) defendant profited from the sale of its goods in the United States under plaintiff's mark; (2) defendant's profits came at the expense of plaintiff's; and (3) defendant's profits were procured in violation of federal and state trademark law were sufficient to state a claim for unjust enrichment).

## V.     Conclusion and Order

For the reasons set forth above, Ortiz's motion to dismiss [#13] is denied.

Dated: New York, New York
       November 16, 2010

*/s/ RMB*

**RICHARD M. BERMAN, U.S.D.J.**

15